**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**


| | |
|---|---|
| **AGSOUTH GENETICS, LLC, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 09-0742-CG-M** |
| ) | |
| **DWANE GLICK,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiffs' motion for summary judgment as to defendant's counterclaim (Doc. 64), defendant's motion for partial summary judgment (Doc. 65), defendant's response in opposition to plaintiffs' motion (Doc. 76), plaintiffs' response in opposition to defendant's motion (Doc. 77), defendant's reply (Doc. 78) and plaintiffs' reply (Doc. 79).  For reasons that will be explained below, the court finds that plaintiffs' motion for summary judgment as to defendant's counterclaim is due to be granted and defendant's motion for partial summary judgment is due to be granted in part, only to the extent that the plaintiffs claim defendant is liable for his purchase of seed in 2003.  In all other respects, defendant's motion for summary judgment is due to be denied.

1

## FACTS

This action arises from the defendant's alleged sale of wheat seed in violation of the Plant Variety Protection Act (PVPA), 7 U.S.C. § 2321 *et. seq.*.  The complaint asserts the following claims: (Count One) damages for infringement of § 2541(a) of the PVPA:  (Count Two) an injunction pursuant to § 2563 of the PVPA ; (Count Three) damages for violation of the Lanham Act ; and (Count Four) treble damages and attorneys fees under § 2565 of the PVPA. (Doc. 1).  Defendant asserts a counterclaim labeled as a claim for abuse of process but which also alleges that plaintiffs wrongfully entrapped him and "consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Glick." (Doc. 16).

Plaintiffs obtained a license giving them exclusive rights to certain wheat varieties,  AGS 2000 and/or AGS 2485, that are protected by the PVPA   . (Doc. 1 ¶ 14; Doc. 1-1; Doc. 1-2; Doc. 1-5; Doc. 1-6).  Defendant purchased AGS 2485 wheat seed in June 2003. (Doc. 68, p. 1-2; Doc. 79-1).  According to the defendant, he placed an order for public variety seed and had no notice that what he received was a protected variety until he was served with this lawsuit. (Doc. 68, p. 2; Doc. 71-1, p. 4).  However, defendant admits knowing that the seed was AGS seed  and testified that it came in red and white AGS bags (Doc. 71-1, p. 4; Doc. 19-1).

Zelotis Wofford called defendant and said he was trying to find some wheat seed to plant. (Doc. 71-1, p. 5).  Mr. Wofford is an investigator working for the Nolan law group who was hired on plaintiffs' behalf. (Doc. 72, p. 3; Doc. 73, p. 9).  Wofford

2

has worked for the Nolan Group for about three years providing information on illegal seed practices. (Doc. 72, p. 3). Defendant Glick set up a time for Wofford to come out and talk to him. (Doc. 71-1, p. 5). A couple of days later, Wofford came out to defendant's farm to talk to him and Wofford recorded their conversation. (Doc. 71-1, pp. 3, 6).

Wofford told Glick he wanted wheat seed and that he planned to harvest it to make his money back. (Doc. 71-1, p. 4; Doc. 79-4, p. 1). Defendant told Wofford he would sell him AGS 2000 seed for $8 a bushel. (Doc. 79-4, pp. 2, 3). Defendant stated that he had sent off a sample of the seed and that it was 97% germ. (Doc. 79-4, p. 2). According to a transcript of the recorded conversation, Glick stated:

> I'm planting it to harvest and I have to sell it to you for feed wheat, just simply because the State makes me, you know what I mean. … legally, I have to sell it to you as feed wheat. But it, I am planting it for a crop, you see what I'm saying? … the State of Alabama and the seed companies will not let me sell it for seed wheat, you see what I'm saying? … I have to call it feed wheat, even though it will grow perfect for seed; there's nothing wrong with it, but I can't sell it as seed wheat, you see what I mean? I mean, it's a technicality that, that's the reason you can buy it from me for eight dollars, or you can go up there and buy bags of it at the Co-op, or wherever, and spend probably eighteen dollars for a fifty pound bag.

(Doc. 79-4, p. 4). At one point in the conversation, Wofford stated that he wanted 200 bushels and the defendant confirmed that he could dump 200 bushels in Wofford's truck. (Doc. 77-2, pp. 2-3). Defendant also testified that he would guess he had about 12 thousand bushels of wheat in his bins. (Doc. 77-4).

3

According to defendant, he does not put flour crop in the same bin as seed crop because the seed crop has malathion in it. (Doc. 79-5).  Defendant reports that he has never sold seed to an individual before and would not have considered it other than to do this man a favor. (Doc. 71-1, p. 10).   The seed he bought from AGS was the parent seed to what he sold to Wofford. (Doc. 71-1, p. 1).

Wofford took 20 bags of wheat seed from defendant at $10 per bag for a total of $200, which he paid for in cash. (Doc. 72, p. 9).  The law firm was supposed to reimburse Wofford for the purchase. (Doc. 72, p. 10).  Wofford reports that he "sampled" the grain – he took a probe and pulled samples from the bags, 15 to the bag, and then poured a little out of each bag into two 5 gallon buckets.  (Doc. 72, p. 10).  Wofford disposed of the rest of the seed in a landfill at Foley, Alabama. (Doc. 72, pp. 10-11).  Wofford sealed the two 5 gallon buckets and transported them back to the law firm's storage facility. (Doc. 72, p. 11).  Wofford also turned the samples over to the law firm in cups folded over and sealed and placed in a paper bag. (Doc. 72, p. 12).  Although he told the defendant he would plant and harvest the seed, he did not actually plant any of it. (Doc. 72, p. 13).

## DISCUSSION

## I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary

judgment." <u>Miranda v. B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 524 (11th Cir. 1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## II. Motions

### A. Defendant's Motion for Partial Summary Judgment

Defendant moves for partial summary judgment of plaintiffs' PVPA claims on the following grounds: (1) that Wofford never intended to plant the wheat seed and thus, the sale did not violate the PVPA;  (2) that his damages should be limited pursuant to § 2567 because defendant had no notice or knowledge that the seed was a protected variety; (3) that there is no proof that defendant purchased AGS wheat in violation of the PVPA; and (4) that there are no exceptional circumstances that would entitle plaintiffs to attorney's fees under 7 U.S.C. § 2565.

"The Plant Variety Protection Act of 1970, 7 U.S.C. § 2321 *et seq.*, protects owners of novel seed varieties against unauthorized sales of their seed for replanting purposes." Asgrow Seed Co. v. Winterboer,  513 U.S. 179, 181, 115 S.Ct. 788, 790 (U.S. 1995).   Congress passed the Plant Variety Protection Act (PVPA),  "in order to provide developers of novel plant varieties with 'adequate encouragement for research, and for marketing when appropriate, to yield for the public the benefits of new varieties,'" Id. (quoting 7 U.S.C. § 2581).  "The PVPA extends patent-like protection to novel varieties of sexually reproduced plants (that is, plants grown from seed) which parallels the protection afforded asexually reproduced plant varieties (that is, varieties reproduced

by propagation or grafting) under Chapter 15 of the Patent Act. ." Id.  To further these

goals, the PVPA provides a cause of action for infringement against any person who

performs without authority any of the following:

> (1) sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it;

> (2) import the variety into, or export it from, the United States;

> (3) sexually multiply, or propagate by a tuber or a part of a tuber, the variety as a step in marketing (for growing purposes) the variety;

> (4) use the variety in producing (as distinguished from developing) a hybrid or different variety therefrom;

> (5) use seed which had been marked "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Prohibited" or progeny thereof to propagate the variety;

> (6) dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received;

> (7) condition the variety for the purpose of propagation, except to the extent that the conditioning is related to the activities permitted under section 2543 of this title;

> (8) stock the variety for any of the purposes referred to in paragraphs (1) through (7);

> (9) perform any of the foregoing acts even in instances in which the variety is multiplied other than sexually, except in pursuance of a valid United States plant patent; or

> (10) instigate or actively induce performance of any of the foregoing acts.

7 U.S.C. § 2541(a).  "The developer of a novel variety obtains PVPA coverage by acquiring a certificate of protection from the Plant Variety Protection Office."  Asgrow Seed Co.,  513 U.S. at 181 (citing 7 U.S.C. §§ 2421, 2422, 2481-2483)

### 1. Sale for Propagation

Defendant asserts that, because the sale to Wofford was not really for the purpose of replanting and harvesting the seed, the sale does not violate the PVPA. The court notes that this court has recently addressed this argument in a case that is almost factually identical to this one.  In  AGSouth Genetics, LLC. v. Cunningham, 2011 WL 1833016, Case No. 09-745-C (S.D. Ala. May13, 2011), this court found that an intent to replant was not required for an infringement of plaintiffs' rights under the PVPA.  Ibid. at *5-6.  This court further found that even if the PVPA required that the sale be for the purpose of propagation, there was evidence that the defendant knew he was selling the seed for that purpose.  Id. at *6.  The undersigned  agrees with this court's prior analysis and finds that for the reasons stated in Cunningham, an intent to replant is not a prerequisite to infringement.  Further, as in Cunningham, there is evidence in this case that the defendant understood that the sale was for the purpose of replanting and harvesting.  As such there is evidence that the defendant's intent was to sell the seed for propagation.  After the sale was complete, whether propagation ultimately occurred does not change the purpose of the sale.

Defendant objects to the plaintiffs' submission of a transcript of the taped conversation as evidence on the basis that it constitutes hearsay that has not been

authenticated.  Defendant contends that this evidence cannot be used to support plaintiffs' claim that the defendant intended to sell the seed for the purpose of propagation.  However, as also discussed in <u>Cunningham</u>, "the district court may consider a hearsay statement if the statement could be reduced to admissible form at trial" <u>Id.</u> at *4 (quoting <u>Hill v. Manning</u>, 236 F.Supp.2d 1292, 1297 (M.D. Ala. 2002). The transcript may be authenticated at trial and is otherwise admissible as admissions of a party opponent.  Therefore, the court may consider the evidence on summary judgment.

### 2. Limitation of Damages Pursuant to § 2567

Defendant asserts that plaintiffs' damages should be limited by 7 U.S.C. § 2567 because he had no notice or knowledge that the wheat seed was a protected variety. Section 2567 provides the following:

> Owners may give notice to the public by physically associating with or affixing to the container of seed of a variety or by fixing to the variety, a label containing either the words "Unauthorized Propagation Prohibited" and after the certificate issues, such additional words as "U.S. Protected Variety". In the event the variety is distributed by authorization of the owner and is received by the infringer without such marking, no damages shall be recovered against such infringer by the owner in any action for infringement, unless the infringer has actual notice or knowledge that propagation is prohibited or that the variety is a protected variety, in which event damages may be recovered only for infringement occurring after such notice.  As to both damages and injunction, a court shall have discretion to be lenient as to disposal of materials acquired in good faith by acts prior to such notice.

7 U.S.C. § 2567.  Defendant contends that he requested a public variety of seed and asserts that there is no evidence that the statutorily approved notices were on the

bags of wheat he purchased.  However, there is evidence that defendant had actual knowledge that the seed he purchased was a protected variety.  The transcript of the recorded conversation between defendant and Wofford indicates that defendant knew that the seed was protected by the PVPA.  Defendant told Wofford he would sell him AGS seed and stated that he could not legally sell it to Wofford for propagation.  The court finds this evidence is sufficient to raise a genuine issue of material fact.

### 3. Defendant's Purchase of AGS Wheat

Defendant asserts that plaintiffs "have no proof that [defendant] *purchased* any AGS wheat from 'individuals', 'producers' or 'growers' in violation of the Act as alleged."  To the extent defendant asserts that there is no evidence he purchased AGS wheat that is protected by the PVPA, the court finds to the contrary.  Defendant has admitted to purchasing AGS wheat seed 2485 and there is evidence that the seed is protected by the PVPA.  However, defendant's assertion appears to be that he did not violate the PVPA by purchasing the AGS wheat seed.  Count One of the complaint alleges that defendant, without authorization from AGSouth, "purchased the AGS 2000 and/or AGS 2485 varieties for reproductive purposes in violation of the PVPA. The court agrees that plaintiffs have not presented any evidence or explained how defendant's mere purchase violated the PVPA.  It is unclear whether plaintiffs actually intended to make such an allegation since Count One appears to primarily claim damages for defendant's unauthorized sale of AGS seed and plaintiffs do not appear to argue in their briefs that defendant's purchase violated the PVPA.  To the

extent plaintiffs contend defendant is liable for his purchase of the seed in 2003, the court finds defendant is entitled to summary judgment.

### 4. Exceptional circumstances

Defendant asserts that there are no exceptional circumstances that would entitle plaintiffs to attorney's fees under 7 U.S.C. § 2565. Section 2565 states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 7 U.S.C. § 2565. Plaintiffs assert that "using the evidence before us and the sheer volume of AGS wheat seed the Defendant used as a platform and the callous ignorance of Plaintiffs' rights shown by Defendant, Plaintiffs intend to argue this case constitutes exceptional conduct thus permitting an award of attorneys' fees and costs to Plaintiffs for Defendant's blatant violations of PVPA." (Doc. 77, p. 7). Plaintiffs appear to contend that defendant has sold AGS wheat on more than one occasion, but has not offered any evidence of any sale other than the single sale of 20 bushels to Wofford. Plaintiffs contend that during the <u>Cunningham</u> case discussed above, the defendant in that case in answer to interrogatories stated that Glick may have information about wheat seed that Cunningham Farms purchased from the Glick farming operation. (Doc. 79-8, p. 1). Cunningham's interrogatory answers go on to state that he did not remember where or when he purchased wheat seed in 2008, that in 2007 he may have purchased a small quantity of seed, he wasn't sure but that it was likely purchased from one of four vendors, one of which was Glick farming

12

operation.  The court finds that discovery answers in another case indicating that Glick may have information about a possible sale that might have occurred is not sufficient to raise a question of fact regarding a second purchase.  However, there is evidence that defendant had a very large amount of seed available to sell and was willing to sell Wofford at least 200 bushels of wheat for propagation knowing that the sale would violate the PVPA.  While it is not clear that such circumstances constitute "exceptional circumstances," the court finds there is sufficient evidence to raise a genuine issue of fact regarding the issue.

### B. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment as to defendant's counterclaim.  Defendant labels his counterclaim as a Complaint for Abuse of Process but also states that plaintiffs wrongfully entrapped him and "consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Glick."

"In order to establish an abuse of process claim under Alabama law, a plaintiff must show: (1) an ulterior purpose; (2) a wrongful use of process; and (3) malice." ClassroomDirect.com, LLC v. Draphix, LLC , 314 Fed.Appx. 169, 174, 2008 WL 185512, *4 (11th Cir. 2008); Yeomans v. Forster and Howell, Inc.  2010 WL 3716394, *12 (M.D. Ala. Sept. 10, 2010) (citing C.C. & J., Inc. v. Hagood, 711 So.2d 947, 950 (Ala. 1998)).  "Additionally, 'abuse of process concerns the wrongful use of process after it has been issued.'" Id. (quoting C.C. & J., Inc. v. Hagood, 711 So.2d 947, 950

(Ala. 1998)).  "[T]here is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions." Id. at 175 (citing Willis v. Parker, 814 So.2d 857, 865 (Ala. 2001)).  Glick's claim does not allege that plaintiffs have engaged in wrongful conduct after initiating process by filing this lawsuit.  Accordingly, the court finds that defendant cannot maintain his claim for abuse of process.

To the extent that defendant has asserted a claim for entrapment, the court is aware of no viable tort in Alabama for entrapment regarding civil liability.  To the extent defendant has attempted to assert a claim for fraud, the court finds he has failed to properly plead such a claim.  Glick's fraud claim does not meet the notice and specificity requirements of Rules 9 and 12 .  FED. R. CIV. P. 9, 12.  The Cunningham case is again instructive as it discusses an almost identical counterclaim under almost identical circumstances.  As this court found in Cunningham, the defendant in this case has failed to properly raise a claim for fraud. See Cunningham, 2011 WL 1833016 at *7-9.

<u>**CONCLUSION**</u>

For the reasons stated above, plaintiffs' motion for summary judgment as to defendant's counterclaim (Doc. 64) is **GRANTED,** and defendant's motion for partial summary judgment (Doc. 65) is **GRANTED IN PART,** only to the extent that summary judgment is granted as to plaintiffs' claim that defendant is liable for his

14

purchase of seed in 2003; in all other respects, defendant's motion for partial summary judgment is **DENIED**.

      **DONE and ORDERED** this 22nd day of September, 2011.

                        /s/  Callie V. S. Granade       
                        UNITED STATES DISTRICT JUDGE